IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-30022 |
| | ) | |
| ARTURO RAMIREZ, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant Arturo Ramirez's Objection to Report and Recommendation (d/e 77) (Objection). Ramirez's Omnibus Pretrial Motions (d/e 59) (Motions) ask the Court to suppress evidence and dismiss the Indictment (d/e 7). On January 28, 2009, United States Magistrate Judge Byron G. Cudmore held an evidentiary hearing on the Motions. On February 2, 2009, Judge Cudmore entered a Report and Recommendation (d/e 75), recommending that this Court deny the Motions. Ramirez now objects to the Report and Recommendation. After careful review of the evidence de novo, the Court overrules the Objection, adopts the Report and Recommendation, and denies the Motions.

1

## STATEMENT OF FACTS

Judge Cudmore thoroughly set forth the evidence presented at the evidentiary hearing in the Report and Recommendation. <u>Report and Recommendation</u>, at 2-33. The Court, therefore, only summarizes the evidence relevant to the Objection. Illinois State Trooper Nathan Miller testified that on February 12, 2007, at approximately 3:40 p.m., he was assisting another officer on a call near mile post 117 on Interstate 55 (I-55). <u>Transcript of Proceedings on January 28, 2009 (d/e 80) (T.)</u>, at 60. At that time, he saw a broken windshield on a tractor-trailer driving northbound on I-55. After completing his assistance of the other officer, he drove northbound to find the tractor-trailer.

Miller stopped the tractor-trailer at mile post 133. <u>T.</u>, at 60. He directed the driver, Defendant Ramirez, to get out of the tractor-trailer and sit with him in the squad car. Miller issued Ramirez a warning for the broken windshield. The Government admitted into evidence a copy of the warning citation issued and photographs that Miller identified as pictures of the cracked windshield. <u>T.</u>, at 62; <u>Government Exhibits</u> 1A-1D & 2.

In addition to the traffic stop, Miller also decided to conduct an inspection of the tractor-trailer. Miller was certified to inspect commercial

vehicles. Miller testified that he believed he was certified to conduct inspections that included inspecting the suspension, exhaust and fuel components of commercial vehicles, referred to as "Level 2" inspections. T., at 64-65. In fact, that certification had lapsed. Miller was only certified to conduct less extensive inspections, referred to as Level 4 and Level 3 inspections. Level 3 inspections included reviewing the driver's documents and log books. T., at 65.

Miller initially inspected Ramirez's log book and documents. Miller found discrepancies in Ramirez's log and documents. T., at 70-76; Government Exhibit 4. He testified that Ramirez also seemed nervous. T., at 69. Miller conducted a check on Ramirez's criminal record and discovered that he had an extensive criminal record, including arrests for trafficking marijuana, involuntary homicide, aggravated assault, and attempt to commit capital murder. T., at 76-77. Ramirez also admitted transporting 30 pounds of marijuana in the past. T., at 77. Miller testified that Ramirez made an unsolicited offer to let Miller search the truck. T., at 78. Miller testified that he did not accept the invitation at that time. Miller testified that he later asked Ramirez for permission to search both the tractor and the trailer, and Ramirez gave his consent to the search. T., at

79-80. Miller then testified that he called for back-up in light of Ramirez's criminal record. T., at 80.

Officer Anthony Maro arrived to assist with a canine search. T., at 180. Maro was a canine officer. He arrived with his dog Vik. Maro had Vik perform a walk-around on the tractor and trailer. Maro testified that Vik alerted once on the trailer. T., at 182. Vik alerted by sitting accompanied by a breathing change and a body posture change. T., at 182. Thereafter, Miller had Ramirez open the trailer. The officers found crates of avocados surrounding 1,260 pounds of marijuana. The officers also found 19 kg. of cocaine.

Miller testified that he then arrested Ramirez and read him his Miranda rights. T., at 83. Miller testified that he looked at his watch and noted that the time of the arrest was 4:12 p.m. T., at 153. Miller testified that Ramirez stated that he understood his rights and waived them. T., at 83. The tractor-trailer and Ramirez were then driven to a nearby seed company parking lot. At 5:49 p.m., Officer Timothy Hansen arrived. Hansen read Ramirez his Miranda rights again, and Ramirez executed a written waiver of his rights. T., at 194-95. Ramirez then agreed to cooperate with authorities. He attempted to complete the delivery to the

4

intended purchaser in the Chicago area while under surveillance of law enforcement. The attempt failed.

Miller's car was equipped with a VHS camera. Miller testified that the camera was designed to start recording when he turned on the police lights, but, often the camera failed to turn on. He testified that he had to remove, and then reinsert, a fuse located under the hood to reset the camera. The camera would then go through a series of self-tests and then turn on. Miller testified that the time stamp that the camera placed on the video also was not accurate, and he did not know how to reset the time.

Miller testified that the camera did not come on properly when he initiated the stop of Ramirez. Miller testified that he discovered that the camera did not work properly after the drugs were found, Ramirez was arrested and given his Miranda warnings the first time. At that point, he stated that he opened the hood and pulled and reinserted the fuse. The camera went through its self-tests and then started recording. T., at 84-85.

The Government submitted the recording into evidence. The time stamp on the recording of the stop started at 18:08:04, indicating 6:08 p.m. on February 12, 2007. Government Exhibit 5, VHS Tape Recording (VHS Tape). The video, however, recorded that the relevant events occurred in

daylight. The tape also showed a small amount of snow on the ground next to the road. Miller stated on the tape that he could read <u>Miranda</u> at any time. <u>Id.</u>, see <u>Government Exhibit 5T</u>, <u>Transcript of Audio Portion of VHS Tape Recording</u>, at 1. Another male voice on the tape thereafter confirmed that he gave consent to the search. The voice confirmed that he consented hoping that the officers would not search. Miller testified this was Ramirez's voice. The same person also confirmed on the tape that the dog Vik "hit on it," and stated that he was carrying 1,100 pounds of marijuana. <u>VHS Tape</u>, see <u>Government Exhibit 5T</u>, <u>Transcript of Audio Portion of VHS Tape Recording (VHS Transcript)</u>, at 3.

The camera continued to run for more than an hour after this conversation, but with no sound. The camera recorded the movement of the truck to the seed company lot and then recorded a scene of traffic passing by the lot. After approximately one hour and twenty minutes passed, the camera recorded the sun setting.

Ramirez testified at the hearing. <u>T.</u>, at 222-23. He stated that Miller's car followed him for about twelve to fourteen miles before finally pulling him over. <u>T.</u>, at 216. He testified that Miller did not say anything about a broken windshield until fifteen minutes after he stopped Ramirez.

6

Ramirez testified that when Miller asked for consent to search the tractor and trailer, he only consented to the search of the tractor. Ramirez testified that he told Miller that he did not have authority to consent to a search of the trailer. T., at 223. Ramirez testified that the dog Vik never sat down or otherwise alerted during the walk-around of the tractor and trailer. T., at 229-30. He also denied that the voice on the video tape was his. He claimed that the tape was falsified. T., at 226-28. He said that the truck appeared cleaner in the video and photographs than it was at the time of the stop. He also testified that a light snow was falling at the time of the stop, but no snow fall was recorded on the video.

Ramirez called a video technician, Chris Bowman, to testify about the tape. Bowman testified that he had examined the tape. He testified that there was no signs of editing the tape. T., at 22-23. He stated that a 3 to 5 second section of tape between time stamps 16:48:52 and 18:08:44 was scrambled as if the tape jerked at that time. T., at 17-18; Government Exhibit 5. The scrambled few seconds of tape occurred at the time that the camera started to record this incident. Bowman did not find anything else unusual in the tape.

Ramirez noted in his objection that Miller stated in his written report

that Ramirez had told him that he was carrying 1,200 pounds of marijuana, but, on the stand, Miller and the other witnesses testified that Ramirez told them that he was carrying 1,100 pounds of marijuana. Ramirez also noted that Miller testified that he asked for Maro to come to the scene primarily to provide back-up, and secondarily to conduct a walk around of the vehicle with his dog Vik. Maro, however, testified that he was called to the scene to conduct a canine walk around.

## ANALYSIS

Judge Cudmore determined that this was a valid traffic stop followed by a valid, consensual search. The Court agrees. The Government's evidence shows that Miller had probable cause to stop Ramirez for driving with a broken windshield. Since Miller had probable cause to stop Ramirez, the stop was valid. Whren v. United States, 517 U.S. 806, 813 (1996).

The Government's evidence also shows that Ramirez's consent was valid. An individual's consent to search must be knowing and voluntary. The validity of such consent is judged by the totality of the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). In this case, Ramirez made an unsolicited offer to search the tractor, and then later consented to the search of the trailer. The officers then read Ramirez his

Miranda rights twice, and he waived his rights orally and in writing. Nothing indicates that the waiver was invalid. Ramirez's subsequent statements to authorities are admissible.

Ramirez claims that all of the officers are lying. The video belies Ramirez's claims. The video shows clearly that Ramirez confirmed that he had given his consent to the search. He consented to the search in hopes that the officer would not bother to search. Ramirez claims that the Government falsified the video tape. The Court has reviewed all of the evidence carefully and agrees with Judge Cudmore that Ramirez is not credible. The officers' testimony, the photographs, and the video tape are all consistent. Ramirez's video technician found no evidence of editing. He found a scrambled portion of tape that occurred between the beginning of the recording of this incident and the end of the recording of a prior incident on the tape. A garbled bit of tape that occurred when the camera was turned off and on is not significant. The recording of the sun setting about one hour and twenty minutes after the camera was turned on also confirms Miller's testimony that he turned the recorder on shortly after he arrested Ramirez. He arrested Ramirez at 4:12 p.m. The recording would put sunset at approximately 5:35 p.m., which would be the appropriate time

for sunset in Central Illinois in February.

Ramirez cites only two inconsistencies in the officers' testimony. Miller stated in his report that Ramirez said that he was carrying 1,200 pounds of marijuana, but the evidence at the hearing indicates that he told the officers he was carrying 1,100 pounds. Second, Miller testified that he requested Maro to come to the scene primarily to provide back-up and secondarily to perform a walk around with his dog Vik. Maro testified that he was called to the scene primarily to perform a walk around with Vik. These two matters are minor and do not detract from the overall credibility of the officers' testimony.[1] Ramirez's denials and claims of falsification of the evidence are simply not credible.

Ramirez also argues that the stop was improper because Miller lost his certification to conduct Level 2 inspections of commercial vehicles. This observation is irrelevant. Miller had probable cause to stop Ramirez for the traffic violation and Ramirez subsequently consented to the search. The search and arrest were valid. Ramirez then waived his Miranda rights and

---

[1] The Objection indicates that the Defendant had additional pro se objections, but counsel for Defendant did not include them in the Objection. Objection, at 8. The Court issued a Text Order giving additional time to file additional material in support of the Objection. Text Order entered March 6, 2009. No additional material was filed.

cooperated with authorities. His subsequent statements are admissible. Miller's authority to conduct administrative inspections is irrelevant. The Court, therefore, adopts Judge Cudmore's recommendation to deny Ramirez's request to suppress evidence.

The Objection does not address Judge Cudmore's recommendation to deny Ramirez's request to dismiss the Indictment. The Court adopts Judge Cudmore's recommendation on this issue for the reasons stated in the Report and Recommendation.

THEREFORE, Defendant's Objection to Report and Recommendation (d/e 77) is OVERRULED. The Court adopts the Report and Recommendation entered February 2, 2009 (d/e 75). The Defendant's Omnibus Pretrial Motions (d/e 59) are DENIED.

IT IS THEREFORE SO ORDERED.

ENTER:  March 23, 2009

    FOR THE COURT:

                                                  s/ Jeanne E. Scott
                                                  JEANNE E. SCOTT
                                UNITED STATES DISTRICT JUDGE